UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 8, 2018

------------------------------------------------------X
                     :

In re                        :       17 Civ. 2594 (KPF)
                     :

QUEEN ELIZABETH REALTY CORP.,  :     Case No. 13-12335 (SMB)
                     :

                Debtor.   :       OPINION AND ORDER
                     :

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Debtor-Appellant Queen Elizabeth Realty Corp. ("Queen Elizabeth" or "Appellant") brings this appeal from an interlocutory order granting Creditor-Appellee SMS Financial G, LLC ("SMS" or "Appellee")) permission to file a late proof of claim pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1). Debtor's bankruptcy petition was filed in July 2013, and creditors were required to file notices of claim by October 28, 2013. SMS's predecessors-in-interest had not been given notice of the proceeding or its attendant deadlines; did not learn of it until December 2015; and filed a proof of claim four months later. After extensive discovery and briefing on this issue, United States Bankruptcy Judge Stuart M. Bernstein granted SMS's motion to file a proof of claim untimely on the basis of excusable neglect. Because Judge Bernstein's decision was not an abuse of his discretion, the order below is affirmed.

**A.   Factual Background**

**1.   Foodmart-All Points Agreement**

On June 25, 2009, Foodmart International II, Corp. ("Foodmart II")

entered into a chattel mortgage with Sierra Credit Corp. ("Sierra"); the

agreement was signed by Lewis Wu, President of Foodmart II.  (Ex. A).  The

same day, Lewis Wu executed a guaranty agreement, whereby the entities

Foodmart International V, Corp. ("Foodmart V"), Queen Elizabeth, and

Farmer's Best Market Corp. ("Farmer's") agreed to guarantee the payments due

to Sierra under the mortgage.  (*Id.*).  Lewis Wu signed on behalf of all guarantor

entities.  (*Id.*).  That same day, Sierra executed a collateral assignment of

contract documents wherein it assigned all rights under the Foodmart II

contract to All Points Capital Corp. ("All Points").  (*Id.*).  Lewis Wu signed, on

behalf of Foodmart II, a notice and acknowledgement of the assignment to All

Points.  (*Id.*).

---

[1]     The Court's consideration of this motion is limited to facts presented in the record below.  *See In re Ampal-Am. Israel Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) ("[T]he district court may not consider evidence outside the record below.").  Accordingly, the facts set forth in this Opinion are drawn from the record provided in Queen Elizabeth's designation under Federal Rule of Bankruptcy Procedure 8009 (Dkt. #4) and the docket of the bankruptcy case, No. 13-12335 (SMB) (Bankr. S.D.N.Y.) ("Bankr. Dkt.").  Citations to the record, which was designated by Queen Elizabeth as a series of exhibits, will be referred to using the convention "Ex. [Letter]."  Included in the exhibits, at Exhibit J, is a transcript of the deposition of Daniel Shorr, which will be referred to as "Shorr Dep."  Appellant's brief in support of its appeal is referred to as "Appellant Br." (Dkt. #6), Appellee's brief in opposition is referred to as "Appellee Br." (Dkt. #10), and Appellant's reply in further support of its appeal is referred to as "Appellant Reply" (Dkt. #11).

### 2.    All Points State Court Litigation

On October 5, 2011, All Points filed suit in New York State Supreme Court, Nassau County, against Foodmart II, Foodmart V, Queen Elizabeth, Farmer's, and Lewis Wu to recover an unpaid sum due and owing of $1,594,682.96. (Ex. A). All Points was represented by Lee Mendelson of Moritt Hock & Hamroff LLP. (*Id.*). In a short form order dated June 13, 2012, Justice Stephen A. Bucaria entered summary judgment in favor of All Points, and ordered that an inquest be held. (*Id.*).

On February 13, 2013, the parties filed a stipulation with the Supreme Court in which the parties consented to a judgment against Foodmart V, Farmer's, Queen Elizabeth, and Wu in the amount of $1,500,000 in lieu of an inquest. (Ex. B). Lewis Wu signed the stipulation on behalf of himself, Foodmart V, and Farmer's; no representative of Queen Elizabeth signed the stipulation. (*Id.*). Also on February 13, 2013, the Supreme Court entered judgment against Foodmart V, Farmer's, and Wu in the amount of $1,500,000. (Ex. A). The judgment explicitly excluded Queen Elizabeth. (*Id.* ("ADJUDGED, that Plaintiff sever and continue the action against Defendant, Queen Elizabeth[.])). The last entry on the docket for this case is dated February 15, 2013, and reads "settled before trial." (Ex. B).

### 3.    Bankruptcy Filing and All Points' Assignment to SMS

Queen Elizabeth filed for bankruptcy under Chapter 11 on July 17, 2013. (Bankr. Dkt. #1). By Order dated September 13, 2013, Judge Bernstein set the deadline for filing proofs of claim (the "Bar Date") as October 28, 2013.

(Bankr. Dkt. #24). The September 13, 2013 Order required Queen Elizabeth to serve notice of the Bar Date on, *inter alia*, "all creditors and other known holders of claims as of the date of this Order," and "all parties to litigation with the Debtor." (*Id.*). On January 14, 2016, Judge Bernstein held a confirmation hearing on Queen Elizabeth's Chapter 11 reorganization plan. (Bankr. Dkt. #325). He then confirmed the plan on January 26, 2016. (Bankr. Dkt. #322).

Meanwhile, on December 8, 2015, Capital One Equipment Finance Corp. ("Capital One," formerly known as All Points), had assigned its rights under the June 25, 2009 agreement with Foodmart II to distressed debt buyer SMS. (Ex. A). Schedule A to the general assignment and assumption agreement contains a list of litigation proceedings and judgments — on that list is an entry for Foodmart II as "borrower" and Queen Elizabeth as "judgment debtor." (*Id.*). The entry includes the docket number for Queen Elizabeth's Chapter 11 proceeding and says "no disposition." (*Id.*).

Discovery in connection with the instant litigation disclosed that in November 2015, Capital One had invited SMS to bid on the June 25, 2009 contract. (Ex. E). SMS conducted due diligence and asked that Capital One "run a search to disclose any bankruptcy filings related to the contemplated transaction." (*Id.*). On December 2, 2015, Capital One became aware of Queen Elizabeth's bankruptcy case, and it was added to Schedule A of the assignment agreement. (*Id.*).

Further insight into the relevant timeline was obtained in June 2016, when Queen Elizabeth deposed Daniel Shorr, a partner and managing director

at SMS, in connection with this litigation. Shorr confirmed that Queen Elizabeth's bankruptcy case had been added to Schedule A following SMS's bankruptcy litigation due diligence. (Shorr Dep. 12:1-14:23). Shorr testified that a few days after the Capital One deal closed (at which point he owned the judgment against Queen Elizabeth), he "personally pulled the docket report … to see what the bankruptcy was about." (*Id.* at 15:16-17). Shorr learned from the docket entries that Queen Elizabeth was "moving through their Fourth Amended Plan and they had financing in place, hadn't yet funded, but they were looking at some takeout financing on their building in Manhattan." (*Id.* at 16:23-17:1). Shorr saw that the Bar Date had passed, "and that All Points and Capital One [had never been] noticed as a [c]reditor in the bankruptcy." (*Id.* at 17:7-9). He did not learn (and, the Bankruptcy Court later determined, would not have learned) from the docket of the pending confirmation date of Queen Elizabeth's reorganization plan.

On December 14, 2015, Shorr retained Lee Mendelson — who was the attorney of record on the judgment — "to file the Assignment of Judgment and file an Appearance and a Motion for the Late Proof of Claim[.]" (Shorr Dep. 15:12-16:8). But, Shorr explained, Mendelson never filed anything in the bankruptcy case and lied when Shorr asked him about it. (*Id.* at 17:17-23). Shorr testified:

> [H]e lied. With a string of phone calls and emails, Mr. Mendelson said he had filed the Assignment of Judgment, he said he had filed the late — the Motion for Late Proof of Claim, and he said he had spoken to opposing counsel. I later determined none of it was true and immediately terminated him in March.

(*Id.*).  Entries in a debt collection software program called Collect show that Shorr contacted Mendelson on December 14, 2015; December 15, 2015; January 4, 2016; January 6, 2016; January 18, 2016; February 1, 2016; and March 8, 2016.  (Ex. J).  An entry dated March 18, 2016 reads "Lee is unresponsive[.]"  (*Id.*).  Shorr testified that he continued to review the docket for Queen Elizabeth's bankruptcy into late January and early February.  He sent Mendelson the documents he pulled and implored him to act, but to no avail.  (Shorr Dep. 19:11-20:15 ("We need to get our claim filed before the plan is confirmed, and it looks like it's too late.")).  At that point, Shorr terminated Mendelson and hired SMS's current counsel.  (*Id.* at 23:16-17).

## B.  Procedural History

### 1.  SMS's Motion in Bankruptcy Court

On April 5, 2016, SMS, through new counsel, filed a motion to file a late proof of claim.  (Bankr. Dkt. #349).  SMS argued that it was a known creditor entitled to notice of the Bar Date and, having not received notice, sought leave to file on the basis of "excusable neglect."  (*Id.* at 5).  Queen Elizabeth filed an objection to the motion on April 28, 2016, but changed focus, arguing that Lewis Wu did not have authority to enter into the June 25, 2009 agreement on behalf of Queen Elizabeth and that, in any event, Queen Elizabeth never signed the stipulation in the Supreme Court action and never had any judgment entered against it.  (Bankr. Dkt. #350 at 2-3).  In other words, Queen Elizabeth argued that All Points was not a known creditor, was not entitled to notice, and

should be barred from filing a late claim under the doctrine of laches.  (*Id.* at 4-5).

Following the filing of SMS's reply brief on May 3, 2016 (Bankr. Dkt. #351), Judge Bernstein held a conference with the parties to discuss the motion; he ordered that the parties conduct discovery, and adjourned the case until June 14, 2016 (Bankr. Dkt. #352).  Shortly thereafter, Queen Elizabeth filed a supplemental objection on May 25, 2016 (Bankr. Dkt. #353), and an amended supplemental objection on June 3, 2016 (Bankr. Dkt. #355).  In these filings, Queen Elizabeth acknowledged that "[o]n or about December 2, 2015, All Points became aware of the Debtor's chapter 11 case," but still asserted a laches defense, claiming that SMS "sat idly by while the Debtor confirmed the [reorganization p]lan[.]"  (*Id.* at 3-4).  On June 10, 2016, SMS filed a supplemental reply brief and argued that the fact — now known to the parties through discovery and acknowledged by Queen Elizabeth — that All Points did not learn about the bankruptcy until December 2015 "put the ... laches defense to rest, once and for all[.]"  (Bankr. Dkt. #357 at 2).  Despite SMS's entreaties to close discovery, Judge Bernstein ordered further discovery on the motion.  (Bankr. Dkt. #358).

On October 25, 2016, SMS filed a memorandum in further support of its motion to file a late claim under Rule 9006(b)(1).  (Bankr. Dkt. #365).  SMS argued that Queen Elizabeth had not met its burden to establish the unreasonable delay or lack of diligence by SMS needed to assert its laches defense and, further, that Queen Elizabeth had failed to show that it would be

prejudiced by SMS's late claim. (*Id.* at 3-6). Queen Elizabeth filed a response to SMS's brief on October 31, 2016. (Bankr. Dkt. #366). Here, Queen Elizabeth doubled down on its laches defense and argued that "mistake or inattention of a creditor's counsel to timely file a proof of claim does not justify allowance of a late-filed claim," because "if a clear deadline is missed due to a law office failure, including inattention or lack of oversight, an extension is not justified." (*Id.* at 5 (citations omitted)). On November 1, 2016, Judge Bernstein held a conference with the parties and solicited supplemental briefing. (Bankr. Dkt. #368).

SMS submitted its supplemental brief on November 9, 2016. (Bankr. Dkt. #369). SMS argued that its due process rights had been violated by Queen Elizabeth's failure to issue notice of the Bar Date and that SMS's delay was excusable under the multifactor standard annunciated in *Pioneer Investment Services Company* v. *Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). (*Id.*). Queen Elizabeth filed its response on November 16, 2016, and continued to assert its laches defense while arguing that *Pioneer* did not apply because All Points was not a known creditor entitled to notice. (Bankr. Dkt. #370).

### 2. The Bankruptcy Court's Decision

On March 24, 2017, Judge Bernstein issued a Memorandum Decision and Order granting SMS's motion to file an untimely proof of claim. *In re Queen Elizabeth Realty Corp.*, No. 13-12335 (SMB), 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017). Judge Bernstein rebuffed Queen Elizabeth's attempts

to avoid the judgment against it in state court: He found it curious that Queen Elizabeth had not argued Lewis Wu's lack of authority as a defense in the state court action and rejected Queen Elizabeth's argument that the state court action was settled before it filed for bankruptcy. *Id.* at *1-2. The Bankruptcy Court also found persuasive that discovery did not reveal any evidence that All Points or its successors knew about the bankruptcy before December 2015. *Id.* at *2.

The Bankruptcy Court found it "immaterial" whether All Points was a known or unknown creditor because, either way, "the debtor did not provide notice consistent with due process." *Queen Elizabeth*, 2017 WL 1102865, at *4. Moreover, the Court found that the proper inquiry for a motion seeking to file a late claim and participate in the distribution was excusable neglect under *Pioneer*, not laches. *Id.* at *5. The Court reasoned that laches would apply had SMS sought "a declaration that it [was] not bound by the confirmation discharge because it lacked actual knowledge of the case in time to protect its rights[.]" *Id.*

In weighing the *Pioneer* factors — "danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith" — the Court focused on the third factor and found that it "weigh[ed] heavily in SMS's favor" inasmuch as SMS immediately took action upon learning of the passed Bar Date and the delay was "not unreasonable under the circumstances." *Queen Elizabeth*, 2017

WL 1102865, at *6. Judge Bernstein reasoned that it was the "pending confirmation hearing rather than the long-passed Bar Date [that] created the urgency." *Id.* Moreover, Queen Elizabeth had posted a misleading Notice of Hearing on PACER that "omitted [the confirmation] from the matters scheduled to be heard on January 14[, 2016]." *Id.* Thus, SMS, through no fault of its own, was not aware of the impending confirmation, and did not know the date by which it needed to act. Finally, Judge Bernstein found that "[t]he evidence of prejudice is entirely hypothetical" and that "[t]he alternative of denying SMS a chance to participate in the case and discharging its claim while allowing equity to retain the benefits of ownership is inequitable." *Id.* at *7. On April 4, 2017, the Bankruptcy Court entered an order granting SMS's motion to file a late claim and set a schedule for the filing of objections. (Bankr. Dkt. #377).

### 3. The Instant Appeal

Queen Elizabeth filed this appeal on April 11, 2017 (Dkt. #1), and filed its designated record on appeal under Federal Rule of Bankruptcy Procedure 8009 on April 18, 2017 (Dkt. #4). Queen Elizabeth filed its memorandum of law in support of its appeal on May 22, 2017 (Dkt. #6), and SMS filed its opposition on June 20, 2017 (Dkt. #10). This appeal became fully briefed when Queen Elizabeth filed its reply brief on July 3, 2016. (Dkt. #11).

**DISCUSSION**

**A.    Applicable Law**

**1.    Appellate Jurisdiction**

Under 28 U.S.C. § 158(a), a district court has jurisdiction to hear appeals of "final judgments, orders, and decrees … [and] with leave of the court, from other interlocutory orders and decrees" of bankruptcy courts.  Queen Elizabeth filed its appeal as a matter of right, and did not move for leave to appeal.  (*See* Dkt. #1).  Neither party has raised the issue of appellate jurisdiction and SMS has not objected to Queen Elizabeth's ability to bring this appeal.  The Court held a telephonic conference with the parties on March 7, 2018, and confirmed that both parties believe the ruling below to be a final and appealable order.[2]

In the ordinary case, appellate jurisdiction does not arise until the entry of a final decision.  *See* 28 U.S.C. § 1291.  But "[t]he rules are different in bankruptcy."  *Bullard* v. *Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). Bankruptcy proceedings encompass numerous discrete disputes that could otherwise operate as individual lawsuits.  *Id.*  In recognition of this feature of

---

[2]    The parties are correct in conceding the inapplicability of interlocutory review.  When considering whether to grant leave for an appeal of an interlocutory bankruptcy order under 28 U.S.C. § 158(a)(3), courts apply the standard set forth in 28 U.S.C. § 1292(b). *In re Lyondell Chem. Co.*, No. 16 Civ. 737 (DLC), 2016 WL 1169521, at *2 (S.D.N.Y. Mar. 22, 2016).  An interlocutory appeal is permitted when it raises "a controlling question of law as to which there is substantial ground for difference of opinion and … an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Interlocutory relief is a "rare exception to the final judgment rule."  *Koehler* v. *Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Because there is no controlling question of law presented nor a substantial basis for differing opinions, the three requirements under § 1292 have not been met.  *See In re Lyondell Chem. Co.*, 2016 WL 1169521, at *3 (denying motion for leave to appeal an interlocutory order).

bankruptcy litigation, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Id.* The Second Circuit has recognized the "more flexible standard of finality that applies in bankruptcy cases" such that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case" and if "[n]othing in the order of the bankruptcy court ... indicates any anticipation that the decision will be reconsidered." *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) (internal quotation marks and citations omitted); *Ades-Berg Inv'rs* v. *Breeden (In re The Bennett Funding Grp.)*, 439 F.3d 155, 160 (2d Cir. 2006) ("The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation."). Courts will often deem orders to be final where "there was simply nothing further to be done in the Bankruptcy Court" as to that dispute. *Ades-Berg Inv'rs*, 439 F.3d at 164.

The ruling below disposed of the discrete issue of whether SMS could file a claim against the Queen Elizabeth bankruptcy estate, and there is no indication that the Bankruptcy Court will reconsider its ruling. To be sure, there remained the issue of whether SMS's claim — predicated on a valid state-court judgment that recited a specific damages figure — would be deemed valid, but Queen Elizabeth has not appealed any subsequent ruling as to the validity or amount of SMS's claim. What is at issue here is whether the Bankruptcy Court fully resolved the dispute over whether SMS would be permitted into the litigation in the first instance, and it did. It is arguable that

this appeal is at the periphery of the Court's jurisdiction. But recognizing the elastic standard of finality applied in the bankruptcy context and the fact that Queen Elizabeth has no further opportunity to present its objections to SMS's entry into the bankruptcy case, the Court will hear this appeal of the ruling below under 28 U.S.C. § 158(a)(1).

### 2. The Standard of Review for Bankruptcy Court Decisions

A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Secs., LLC*, No. 15 Civ. 1151 (PAE), 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016) (internal quotation marks and citation omitted). A bankruptcy court's decision allowing the filing of a late claim under Federal Rule of Bankruptcy Procedure 9006(b)(1) is reviewed for abuse of discretion. *Collins* v. *J&N Rest. Assocs., Inc.*, 676 F. App'x 18, 21 (2d Cir. 2017) (summary order) (citing *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 146 B.R. 84, 87 (S.D.N.Y. 1992) ("Since the determination of whether … to grant a request to file late is expressly left to the Bankruptcy Court's discretion, [the district court] may review the … decision for abuse of discretion only.").

"As the Second Circuit has held, '[a] bankruptcy court exceeds its allowable discretion where its decision [i] rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or [ii] cannot be found within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding.'"

13

*In re Tribeca Mkt., LLC*, 516 B.R. 254, 269-70 (S.D.N.Y. 2014) (quoting

*Schwartz* v. *Geltzer (In re Smith)*, 507 F.3d 64, 73 (2d Cir. 2007)).  The

Bankruptcy Court's factual findings are reviewed for clear error, whereas its

legal conclusions are reviewed *de novo*.  *In re Margulies*, 566 B.R. 318, 328

(S.D.N.Y. 2017) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d

Cir. 2000)).  "A finding is 'clearly erroneous' when the reviewing court is 'left

with the definite and firm conviction that a mistake has been made.'"  *Id.*

(citation omitted).

Queen Elizabeth argues that the Bankruptcy Court's conclusion was a

"mixed finding of fact and conclusion of law" insofar as it rested on incorrect

law and clear factual error.  (Appellant Br. 5).  Even assuming the Bankruptcy

Court's ruling is so, the standard of review remains abuse of discretion.  As the

Supreme Court has very recently observed, "[m]ixed questions are not all

alike" — those that rest primarily on the facts are reviewed for clear error and

those that rest primarily on the law are reviewed *de novo*.  *U.S. Bank Nat. Ass'n*

*ex rel. CWCapital Asset Mgmt. LLC* v. *Vill. at Lakeridge, LLC*, — S. Ct. —, 2018

WL 1143822, at *5 (Mar. 5, 2018); *accord id.* at *8-9 (Sotomayor, J. concurring)

(observing that the standard of review depends on the test applied below).

Ultimately, however, matters that are left to the lower court's discretion are

reviewed for an abuse thereof, even where a court engages both facts and law

to arrive at its ruling.  Indeed, the difference between a two-step approach to a

mixed question and the abuse of discretion standard is often minimal, because

"the exercise of discretion based on clearly erroneous facts or incorrect rulings

of law would necessarily constitute an abuse of discretion." *United States* v. *Martinez*, 621 F.3d 101, 109-10 (2d Cir. 2010); *see id.* ("While one could fairly argue that the [ruling below] would be subject to a two-step review — clear error for factual findings and *de novo* for rulings of law — in this context the inquiries often are not clearly delineated. Accordingly, we conclude that the better course is to apply an abuse of discretion standard of review.").

Where, as here, the Bankruptcy Court engaged a robust factual record to reach its legal conclusion, this Court reviews its factual findings for clear error and its legal conclusions *de novo* and, finding no error in either, holds that the Bankruptcy Court's order allowing SMS's late claim was not an abuse of its sound discretion. *See In re AMR Corp.*, 662 F. App'x 77, 79 (2d Cir. 2016) (summary order).

### 3. The Standard for Filing Late Proofs of Claim

Federal Rule of Bankruptcy Procedure 9006(b)(1) permits a bankruptcy court to accept a late-filed claim if the delay was occasioned by "excusable neglect." In *Pioneer*, the Supreme Court resolved a circuit split over the meaning of "excusable neglect," and held that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. The factors to be considered under *Pioneer* are thus, "[i] the danger of prejudice to the debtor, [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith." *Id.* The *Pioneer* Court was clear

that excusable delay is an "elastic concept" and that late claims may be permitted even if caused "by inadvertence, mistake, or carelessness." *Id.* at 388, 392.

The Second Circuit takes "a hard line" in applying the *Pioneer* test, and admonishes district courts to focus their inquiry on the third factor — the reason for the delay. *In re Enron Corp.*, 419 F.3d at 122. In general, a creditor's counsel's inattention to a known bar date or other deadline will not qualify as excusable neglect. *Id.* at 126 (holding that late proof of claim would not be permitted where counsel was aware of the bar date but was not focused on the deadline because of competing priorities); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 122-24 (Bankr. S.D.N.Y. 2010) (declining to permit late claims due to a variety of attorney errors); *CVI GVF (Lux) Master S.A.R.L.* v. *Lehman Bros. Holdings, Inc.*, 445 B.R. 137, 142 (S.D.N.Y. 2011) (concluding that failure to discover guarantee resolutions where creditor could have easily done so was not excusable neglect). In the normal course, a party asserting excusable neglect under *Pioneer* will lose. *In re Enron Corp.*, 419 F.3d at 122. But not all assertions will fail, and for this reason *Pioneer* instructs courts to look to the equities of, and consider the circumstances surrounding, an application for a late claim.

## B.   The Bankruptcy Court's Allowance of SMS's Late Claim Was Not an Abuse of Discretion

Queen Elizabeth argues on appeal that SMS's "delay was not excusable neglect within the meaning of the applicable case law." (Appellant Br. 6). It makes clear, however, that it "does not argue that [SMS] is barred from filing

its [p]roof of [c]laim because it missed the Bar [Date]" but, rather, takes issue with "what [SMS] did when it learned of [Queen Elizabeth's b]ankruptcy on December 2, 2015." (*Id.* at 5-6). Specifically, Queen Elizabeth claims that "[t]he Bankruptcy Court erred when it failed to emphasize [SMS's] reason for the delay" and "gave short shrift" to the argument that SMS's delay could not be excused on the basis of "law office failure." (*Id.* at 8). In opposition, SMS argues that SMS never raised the "law office failure" argument in the Bankruptcy Court, and that this Court should reject Queen Elizabeth's arguments on the merits because the delay — and any prejudice that flows from it — was occasioned by Queen Elizabeth's failure to notify SMS's predecessor of the bankruptcy proceeding and Bar Date. (Appellee Br. 11-19). SMS argues, further, that it was entitled to relief below under a due process standard, which would have obviated the need to consider the *Pioneer* excusable neglect standard. (*Id.* at 19-22).

### 1. The *Pioneer* Factors Favor SMS

To review, the *Pioneer* factors to be considered are "[i] the danger of prejudice to the debtor, [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith." 507 U.S. at 395. The first and second factors weigh in favor of SMS. The Bar Date set by the Bankruptcy Court was October 28, 2013, and SMS filed its motion to submit a claim on April 5, 2016. The total period of delay was about 30 months. The parties agreed in the proceedings below that

17

Queen Elizabeth did not provide SMS's predecessors with actual notice of the Bar Date (putting aside the question of whether they were entitled to such notices), and discovery revealed that All Points (by then, Capital One) did not become aware of the bankruptcy petition until early December 2015 during the due diligence conducted by SMS.

Because there is no bright-line rule governing the length of delays, "courts consider the degree to which the delay might disrupt the judicial administration of that particular case." *In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (citing *In re Enron Corp.*, 419 F.3d at 128). SMS found out about the bankruptcy proceeding in early December 2015 and sought leave to file its untimely claim on April 5, 2016. In the intervening four months, the Bankruptcy Court held a hearing on Queen Elizabeth's reorganization plan and confirmed the plan on January 26, 2016. The Bankruptcy Court found that "the four month delay was short" and reasoned that SMS would have had to file its motion before January 26, 2016, "[t]o avoid the prejudice that the debtor claims" — namely, that it would have to re-do its plan. *Queen Elizabeth,* 2017 WL 1102865, at *6. (*See also* Appellant Br. 15 ("The Debtor was prejudiced in that it now must create a new Amended Chapter 11 Plan of Reorganization to address [SMS's] purported claim.")). Put differently, after January 26, 2016, "the damage … was done, and any further delay would not have added to it." *Id.*

The Court finds that the period of delay attributable to SMS (four months) was not significant and did not inflict irreparable damage on the

administration of Queen Elizabeth's bankruptcy.  Notably, Queen Elizabeth placed a notice on the docket that failed to include the date of the confirmation hearing, leaving SMS in the dark as to its timing and, consequently, the urgency of filing its claim.  *Queen Elizabeth*, 2017 WL 1102865, at *6.  Because only the first two months of the four-month delay can be said to have affected the administration of the bankruptcy — and because SMS would have better understood the need to file sooner had the docket been clearer about the confirmation hearing — the Court finds that the length of the delay favors SMS.

What is more, permitting SMS's late claim will not "prejudice" Queen Elizabeth, as the term was used by the *Pioneer* Court.  *See In re Enron Corp.*, 419 F.3d at 130-31 (discussing *Pioneer*'s concept of prejudice).  SMS filed its claim after the reorganization plan had been confirmed, but this was due, at least in part, to Queen Elizabeth's filing of a misleading Notice of Hearing. *Queen Elizabeth*, 2017 WL 1102865, at *6-7.  Queen Elizabeth says it is prejudiced because it must now draft a new plan.  (Appellant Br. 15).  The Bankruptcy Court found this unavailing, and this Court does as well.  *See id.* at *7 ("The evidence of prejudice is entirely hypothetical.").  Here, as it did below, Queen Elizabeth argues that it will be prejudiced because "it built into the … Plan … reserves sufficient to carry the company forward after the proceeding was dismissed." (Appellant Br. 15).  Even if true, Queen Elizabeth does not explain why the reserve funds may not be used to satisfy SMS's claim, if deemed meritorious, or how any other claims will go unsatisfied if SMS's claim is paid.

But this does not end the inquiry — delay may be deemed inexcusable even where there is no prejudice, *In re Keene Corp.*, 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995) ("*Pioneer* does not stand for the proposition 'no harm, no foul.'"), and it is often said that the third *Pioneer* factor (the reason for the delay) is the most important, *Williams* v. *KFC Nat. Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004).[3] Queen Elizabeth argues that the reason for SMS's delay in filing its motion is "law office failure," and contends that this is not a form of excusable neglect. (Appellant Br. 8-12).

Before reaching the merits of Queen Elizabeth's argument, the Court addresses SMS's contention that this argument "was never offered or relied on by SMS before the Bankruptcy Court," and that it premised its motion for leave to file a late claim on the fact that Queen Elizabeth "failed to give [SMS's] predecessor-in-interest … any notice of the Bankruptcy Case or the Bar Date." (Appellee Br. 11-12). The contention is not entirely accurate. SMS may not have relied on its attorney's failure as the basis for its neglect, but it recognized, in response to statements by the Bankruptcy Court at a conference, that "[t]he reason for the additional four months of delay was, as

---

[3]    The Court relegates to a footnote its discussion of the fourth *Pioneer* factor — whether the movant acted in good faith. That is because Queen Elizabeth did not argue bad faith before the Bankruptcy Court, and its opening appellate brief explicitly says, "[t]here is no argument that [SMS] acted in bad faith." (Appellant Br. 16). In a curious about-face, Queen Elizabeth argues for the first time in reply that SMS intentionally waited until after the reorganization plan was approved to file its claim and that SMS "[s]eiz[ed] upon the [p]lan's terms" in "bad faith." (Appellant Reply 7). The Court need not consider this belated claim. *McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (observing that courts "ordinarily will not consider issues raised for the first time in a reply brief"). Even if the Court were to consider Queen Elizabeth's bad faith argument, it would find that there is no evidence in the record to support it. This factor, either way, weighs in favor of SMS.

per the Court, the neglect of SMS'[s] prior counsel to submit a motion to file a late claim." (Bankr. Dkt. #369). SMS even relied on its efforts to implore prior counsel to act as evidence that it had not acted in bad faith. (*Id.*). Queen Elizabeth argued in response that the failure of SMS's counsel to file a motion could not be the basis for excusable neglect. (Bankr. Dkt. #370). The Bankruptcy Court considered the arguments on both sides and found that "SMS … immediately instructed Mendelson to file a motion to permit its late claim, and Mendelson negligently failed to do so, [such that] the resulting delay was not unreasonable under the circumstances." *Queen Elizabeth*, 2017 WL 1102865, at *6. Because the Bankruptcy Court considered and decided the issue of whether a delay attributable to SMS's former counsel could be excused, the Court will consider Queen Elizabeth's challenges to that ruling in this appeal.

The Bankruptcy Court found that the full period of delay was occasioned by both All Points' lack of notice and SMS's counsel's failure to seek leave to file a late claim. *Queen Elizabeth*, 2017 WL 1102865, at *6. Queen Elizabeth argues now that "[t]he Bankruptcy Court erred when it … gave short shrift" to the argument that "law office failure" is not excusable neglect. (Appellant Br. 8). To the extent the Bankruptcy Court accorded less to this argument, it is because Queen Elizabeth did not brief the *Pioneer* factors and only raised this argument to support its laches defense. (Bankr. Dkt. #370). In any event, the decision below was not error.

Queen Elizabeth cites to several cases (*see* Appellant Br. 10) where attorneys who knew about a bar date or other deadline in the proceedings nonetheless failed to act. *See, e.g.*, *Canfield* v. *Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997) (failure to timely file an opposition to motion for summary judgment was not excusable where the court's order was clear); *Carlebach* v. *Tyrnauer*, No. 15 Civ. 5610 (RRM), 2016 WL 5349781, at *3 (E.D.N.Y. Sept. 23, 2016) (dismissing bankruptcy appeal where neither counsel nor his staff saw the court's scheduling order and failed to abide by it); *In re Caritas Health Care, Inc.*, 435 B.R. 111, 116 (Bankr. E.D.N.Y. 2010) (declining to allow late claim where creditor's counsel received notice of the bar date and did not file in time); *In re Dana Corp.*, No. 06-10354 (BRL), 2008 WL 2885901, at *5 (Bankr. S.D.N.Y. July 23, 2008) (holding that claimant did not demonstrate excusable neglect where debtor served notice of the bar date on claimant's counsel of record who failed to act); *In re Musicland Holding Corp.*, 356 B.R. 603, 608 (Bankr. S.D.N.Y. 2006) (holding that neglect was not excusable where counsel was aware of bar date and prepared papers but did not file them due to "miscommunication" with "administrative personnel"); *see also Pioneer*, 507 U.S. at 396 (observing that claimant should normally be charged with its counsel's failure to file a timely claim despite having notice of the bar date). These cases are easily distinguished from the case at bar.

This case does not involve the "clear deadline" at issue in the cases Appellant cites. Here, SMS's then-counsel did not act in derogation of a clear court order, nor did he simply misread or fail to account for a known (or easily

22

knowable) deadline.  The Bankruptcy Court found that, by early December

2015, Mendelson knew of the bankruptcy proceeding and that the Bar Date

had passed.  *Queen Elizabeth*, 2017 WL 1102865, at *6.  He did not know,

however, that the confirmation hearing — the event that created the urgency of

his filing — was afoot because Queen Elizabeth put a misleading Notice of

Hearing on the docket.  *Id.*  Mendelson's client, Daniel Shorr, testified that he

asked Mendelson to file an assignment of judgment and motion for a late claim

and sent Mendelson documents pulled from the public docket.  (Shorr

Dep. 17:10-14).  Shorr tracked the public docket, and later determined that

Mendelson had not filed the requested submissions.  (*Id.* at 16:18-17:23).

Shorr immediately fired Mendelson and retained new counsel to assert its

claim in the bankruptcy proceeding.  (*Id.*).

The *Pioneer* inquiry is "at bottom an equitable one" that "tak[es] account

of all relevant circumstances surrounding the party's omission."  *Pioneer*, 507

U.S. at 396.  And the Second Circuit has recognized that *Pioneer* announced "a

more liberal standard for determining whether there had been 'excusable

neglect.'"  *Canfield*, 127 F.3d at 250 (citation omitted); *see also id.* ("[A]lthough

a late filing will ordinarily not be excused by negligence, that possibility is by

no means foreclosed." (internal quotation marks and citation omitted)).

Because SMS's predecessors did not have notice, actual or constructive, of the

proceedings or the Bar Date, and because Queen Elizabeth's conduct deprived

SMS and its counsel — the latter of whom was careless, to be sure — of

information that would have prompted SMS to file earlier, the Court finds that the Bankruptcy Court did not abuse its discretion in permitting the late claim.[4]

### 2. The Court Need Not Consider SMS's Contention That It Was Entitled to Relief Under Due Process

Appellee SMS asks the Court to affirm the Bankruptcy Court's ruling that it was entitled under the *Pioneer* factors to file its late claim, but offers alternatively that the Court could affirm on the basis that Queen Elizabeth's failure to provide SMS's predecessor with notice of the Bar Date violated the predecessor's due process rights. (Appellee Br. 19-22). SMS made this argument below, and the Bankruptcy Court rejected the argument because SMS had ultimately acquired knowledge of the bankruptcy proceeding and the passed Bar Date. *Queen Elizabeth*, 2017 WL 1102865, at *4-5 ("The question is whether a creditor who never received actual or constructive notice of the bar date but nevertheless knows it is under a duty to act. [ ] The answer must be yes."); *see also id.* ("[*United Student Aid Funds, Inc.* v.] *Espinosa*[, 559 U.S. 260 (2010)] as well as the governing law regarding excusable neglect and laches, … imply that a creditor who independently acquires knowledge of a pending action that will affect its rights cannot sit idly by[.]").

---

[4]     Queen Elizabeth asserted a laches defense in the Bankruptcy Court; Judge Bernstein rejected it, and Queen Elizabeth does not challenge that finding on appeal. The Bankruptcy Court found that SMS's motion should be analyzed under the *Pioneer* test, not laches, because of the relief it sought. *In re Queen Elizabeth Realty Corp.*, 2017 WL 1102865, at *5-6. Had SMS sought "a declaration that it is not bound by the confirmation discharge because it lacked actual knowledge of the case in time to protect its rights," rather than permission to file a late claim, "*Pioneer* [would] not apply," and the Bankruptcy Court would have analyzed SMS's motion under the doctrine of laches. *Id.* Because Queen Elizabeth does not raise this issue on appeal, the Court will not address it.

Because it affirms the ruling below on the *Pioneer* analysis, the Court need not decide the issue of SMS's due process claim. That said, the Court agrees with the Bankruptcy Court's determination that, under *Espinosa*, a creditor with actual knowledge of a bankruptcy proceeding — even if the creditor did not receive the notice it was due — may not sit on its rights indefinitely. *Espinosa*, 559 U.S. at 272 (finding that debtor's failure to serve creditor with the summons and complaint did not absolve creditor's inaction where creditor knew about the proceedings). Once SMS learned of the proceedings, it had to act even assuming that Queen Elizabeth's earlier failure violated its procedural due process rights. *See In re Medaglia*, 52 F.3d 451, 456 (2d Cir. 1995) (holding that the notice requirements of the Bankruptcy Rules "do not speak to the situation in which, notwithstanding the absence of formal notice, creditors obtain actual knowledge of a bankruptcy proceeding" and do not absolve inaction where a party learns of a proceeding). Due process requires that a creditor be given "'an opportunity to be heard,' which is accomplished by 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Bongiovanni ex rel. Bongiovanni* v. *Grubin*, 451 F. App'x 53, 54 (2d Cir. 2016) (summary order) (quoting *In re Medaglia*, 52 F.3d at 455). SMS's predecessors did not receive notice consistent with due process, but SMS will now receive an opportunity to be heard. The Court finds no basis to disrupt the Bankruptcy Court's ruling that SMS was not entitled to relief on a due process theory.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's order permitting SMS to file a late claim is AFFIRMED.  The Clerk of Court is directed to terminate all pending motions, adjourn all dates, and close this case.

SO ORDERED.

Dated:     March 8, 2018
           New York, New York

_____
           KATHERINE POLK FAILLA
           United States District Judge